IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL BELL, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. PX-17-1655 |
| | * | |
| | * | |
| UNIVERSITY OF MARYLAND COLLEGE PARK CAMPUS FACILITIES MANAGEMENT, *et al.*, | * | |
| | * | |
| Defendants. | | |

******

**MEMORANDUM OPINION**

Pending before the Court in this employment discrimination action is the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants the University of Maryland College Park, the University System of Maryland Board of Regents, and individually named defendants Wallace Loh, Jack Baker, Sharon Simmons, Roxene Kasterns, Charles Reuning, Nancy Yeroshefsky, and James McClelland. (ECF No. 20.) Defendant Barrett Johnson also moves to dismiss, incorporating by reference the arguments of the previously listed Defendants. (ECF No. 22.) The matter has been fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments, the Court GRANTS IN PART and DENIES IN PART Defendants' motions.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and construed in the light most favorable to them.

**A. Plaintiffs' Work History with UMCP**

Plaintiffs Michael Bell and Duray Jones are African American, male employees of the University of Maryland College Park ("UMCP"). ECF No. 12 ¶¶ 5, 6. Bell is a High Voltage Electrician, and Jones is a Systems Reliability Technician. ECF No. 12 ¶¶ 5, 6. Both are employed under the auspices of UMCP's Facilities Management Department ("Facilities Management"). UMCP is governed by its Board of Regents (the "Board"). ECF No. 12 ¶ 8. Defendant Barrett Johnson, an African American man, was a Construction Supervisor in Facilities Management and was the immediate supervisor of Plaintiffs, along with the other three members of their five-member team. ECF No. 12 ¶¶ 15, 26. Defendant Nancy Yeroshefsky is the Director of Human Resources for Facilities Management. ECF No. 12 ¶ 11. Defendant Sharon Simmons is the Assistant Director of Staff Relations for Facilities Management. ECF No. 12 ¶ 12. Defendant Roxene Kastens is the Associate Director for Facilities Management. ECF No. 12 ¶ 14.

As a High Voltage Electrician, Bell is qualified to work on electrical systems, including those in excess of 13,000 volts. ECF No. 12 ¶ 51. Jones, as an Electrical System Reliability Technician, is responsible for operation, testing, evaluation, analysis, maintenance, and repairs of various electrical and building systems. ECF No. 12 ¶ 70. Jones, too, is permitted to work on electrical systems that exceed 13,000 volts. ECF No. 12 ¶ 70.

Beginning in April 2013, Bell and Jones were assigned to work on a fire alarm system at UMCP. ECF No. 12 ¶¶ 53, 72. University electrical systems are less than 640 volts and fire alarm systems typically operate at 24 volts. ECF No. 12 ¶ 51. Neither Plaintiff's position description mentioned fire alarm systems. ECF No. 12 ¶¶ 52, 71. Bell and Jones worked on

various fire alarm projects through June 2014. ECF No. 12 ¶¶ 54, 73. Plaintiffs allege that these work assignments fell outside their job descriptions. *See* ECF No. 12 ¶¶ 18, 75.

On April 15, 2013, Bell and Jones sent a letter to UMCP's Human Resources department ("HR"), complaining of job safety concerns and about their assignments. ECF No. 12 ¶ 18. Although UMCP denied that Bell or Jones were being asked to complete improper assignments and did not alter their job descriptions, UMCP did change the job description for Philip Reisler, a Caucasian male employee. ECF No. 12 ¶¶ 19, 20. A year later, on April 30, 2014, Bell and Jones sent an email to the Facilities Management supervising team asking for assistance with "misconduct" visited upon them after their April 15, 2013, letter. ECF No. 12 ¶¶ 14, 58, 74. The management team was comprised of Simmons; Yeroshefsky; Jack Baker, the Executive Director for Facilities Management; James McClelland, the former Associate Director for Facilities Management; and Charles Reuning, the Associate Vice President and Chief Facilities Officer for Facilities Management. ECF No. 12 ¶¶ 10, 13, 16, 24.

In May and June of 2014, Bell and Jones filed a series of formal grievances as detailed more fully below. Bell and Jones were then removed from fire alarm work in June 2014, allegedly because UMCP was concerned that the Plaintiffs may be owed additional compensation for that work above their regular pay, which UMCP did not wish to pay. ECF No. 12 ¶¶ 33, 55. Although Johnson told Bell that he would try to obtain additional compensation or a new job classification for Bell, ultimately, Johnson was unsuccessful. ECF No. 12 ¶ 57.

**B. Grievances**

Facilities Management took no action in response to Plaintiffs' April 2013 and April 2014 communications regarding inappropriate work assignments, so Jones and Bell each filed a formal grievance on May 1, 2014 (the May 1 grievances). *See* ECF No. 12 ¶ 25. In response to

these grievances, John Farley, a UMCP employee, requested a job description audit be conducted on the Electrician – High Voltage position. ECF No. 12 ¶ 28. The grievances were held in abeyance, and Plaintiffs filed an additional formal grievance on June 4, 2014 (the June 4 grievance). ECF No. 12 ¶¶ 28, 29. Plaintiffs filed a fourth grievance on June 12, 2014 (the June 12 grievance), the day they were taken off fire alarm work. In this grievance, Plaintiffs complained about their reassignment, being given incorrect work assignments, "misconduct," and retaliation for filing their initial three grievances. ECF No. 12 ¶ 34.

On June 11, 2014, a partial decision was rendered on Bell's May 1 grievance, with the issue of proper job classification deferred until the requested job audit could be completed. ECF No. 12 ¶ 31. After another hearing on December 5, 2014, Bell's grievance was dismissed. ECF No. 12 ¶¶ 31, 37. Jones' May 1 grievance likewise was dismissed. ECF No. 12 ¶ 39.

On June 11, 2014, a hearing was held on the June 4 grievance, and the grievance was denied. ECF No. 12 ¶ 32. An additional hearing was held on September 30, 2014, and the grievance once again was denied. ECF No. 12 ¶ 38. The final hearing on the June 12 grievance was held on November 7, 2014; that grievance, too, was denied. ECF No. 12 ¶¶ 34, 35.

**C. Alleged Discrimination and Retaliation**

Although Plaintiffs' pleadings are less than a model of clarity, the following facts as set forth in the Amended Complaint are pertinent to Plaintiffs' discrimination and retaliation claims. Plaintiffs allege that Johnson's May 2013 performance reviews of Plaintiffs unfairly refer to their having "communication problems." ECF No. 12 ¶ 21. Additionally, in late May 2013, Johnson informed the UMCP payroll department and electricians that all communications—presumably to Bell and Jones—were first to go through him, which caused errors on Bell's paycheck. ECF No. 12 ¶ 27. Later, in December 2013, Jones' car was broken into and his work phone was

stolen. Although Jones reported the incident, he was written up and did not receive a replacement phone, unlike Caucasian Facilities Management employees. ECF No. 12 ¶ 22.

The Amended Complaint does not describe any allegedly discriminatory acts occurring between December 2013 and March 2014. In March 2014, Bell received a write-up for being late to work even though he was on approved leave; Caucasian coworkers had not been similarly written up for tardiness. ECF No. 12 ¶ 23. Then, "immediately" after the filing the May 1 grievances, Johnson informed Bell and Jones that Johnson would require them to fill out their own daily paperwork, even though Johnson continued to fill out daily paperwork for the other team members. ECF No. 12 ¶ 26.

Subsequently, during a meeting that took place in June 2014, Simmons berated and cussed at Bell, told Bell to "get over" the fact that his grievances were denied, and commented that Bell "was tough and could handle the retaliation." ECF No. 12 ¶¶ 63–64. Bell further alleges that he was "in the process of working with human resources to obtain a new position which included a higher salary," which was "taken away" from Bell without explanation. ECF No. 12 ¶ 65. Then in July 2014, pictures of wild mustangs appeared on the employee board in the lunchroom with Bell's and Jones' names on them. ECF No. 12 ¶ 36.

The Amended Complaint is once again silent as to any relevant events occurring between July 2014 and June 2015. On June 24, 2015, the day that Jones' grandmother passed away, Simmons phoned Jones to inform him that he had to submit paperwork before returning to work. ECF No. 12 ¶ 41. The Amended Complaint does not explain why Jones had been off from work, or what paperwork was needed upon his return. Then, on August 25, 2015, Simmons directed HR to stop all communications with Bell and Jones. ECF No. 12 ¶ 42.

During the summer of 2015, Bell and Jones were given outdoor work assignments during the extreme heat while other Caucasian team members were assigned to work indoors. ECF No. 12 ¶ 44. Then, in the winter of 2015, Jones and Bell were assigned to work outdoors during extreme cold and snow while Caucasian teammates received work assignments indoors. ECF No. 12 ¶ 45. On December 9, 2015, Kastens stated that she would "straighten out" Bell and Jones because they were the "problems" in the department. ECF No. 12 ¶ 46. Later, from January through April of 2016, Bell and Jones were assigned to work in a building which contained mold. ECF No. 12 ¶ 47.

In February 2016, Bell and Jones punched in two minutes late because they had been talking to their supervisor. ECF No. 12 ¶ 77. Kastens wrote up Jones and Bell for tardiness, despite no other Caucasian team member being written up for tardiness during that incident or any other time in the past. ECF No. 12 ¶ 77. After an HR investigation, HR recommended that Kastens rescind the write-up. ECF No. 12 ¶ 77.

By April 2016, Bell had sustained physical injuries after being exposed to the mold in the building in which he was assigned to work. Bell has been receiving worker's compensation since that time. ECF No. 12 ¶ 67. Plaintiffs allege that during the worker's compensation process, Kastens falsely asserted that Bell was not injured at work, but rather that he was a drug addict. ECF No. 12 ¶ 68. Finally, Plaintiffs allege that in the summer of 2016, Kastens called Plaintiffs the "Facilities Management police." ECF No. 12 ¶ 78.

Plaintiffs filed Formal EEOC complaints on June 8, 2015, and on September 28, 2015, a Title IX Complaint with the Office of Civil Rights. ECF No. 12 ¶¶ 40, 43. On October 17, 2016, Plaintiffs advised the EEOC in writing of further events which supported their hostile

work environment claims. ECF No. 12 ¶ 48. On March 21, 2017, the EEOC issued Plaintiffs a right-to-sue letter. ECF No. 12 ¶ 49.

Plaintiffs then filed suit in this Court, alleging violations of Title VII (Count I), Title VI (Count II), the Maryland Fair Employment Practices Act ("MFEPA"), Maryland's anti-discrimination analogue to Title VII (Count III), Title IX (Count IV), 42 U.S.C. § 1983 (Count V), the Maryland Constitution (Count VI), Negligence (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Negligent Infliction of Emotional Distress (Count IX), Defamation (Count X), and "Continuing Discrimination" (Count XI). After Defendants moved to dismiss, Plaintiffs withdrew their Title IX claim and conceded that their § 1983 claims properly are dismissed. *See* ECF No. 26 at 28.

With respect Plaintiffs' state-law tort and constitutional claims, Defendants argue that Eleventh Amendment immunity bars suit in this Court. Additionally, Defendants contend that the Amended Complaint does not set forth sufficient facts to support Plaintiffs' discrimination and retaliation claims. The Court addresses each argument in turn.

## II. STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the Court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations included in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges the Court's authority to hear the claims raised in a complaint. *See Ihenachor v. Maryland*, Civ. Action No. RDB-17-3134, 2018 WL 1863678, at *2 (D. Md. April 18, 2018). Although the United States Court of Appeals for the Fourth Circuit has not ruled definitively as to whether dismissal on Eleventh Amendment immunity grounds should be analyzed under Federal Rule of Civil Procedure 12(b)(6) or 12(b)(1), a 12(b)(1) analysis is favored because the Eleventh Amendment "functions as a block on the exercise" of the Court's subject matter jurisdiction. *Gross v. Morgan State Univ.*, ___ F. Supp. 3d ___, 2018 WL 189175, at *2 (D. Md. April 19, 2018) (internal quotation marks omitted); *see Ihenachor*, 2018 WL 1863678, at *2; *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547–48 (D. Md. 2008). Under Rule 12(b)(1), a plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Ihenachor*, 2018 WL 1863678, at *2. Subject-matter

jurisdiction challenges may proceed either facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Beckham*, 569 F. Supp. 2d at 547–48.

## III. DISCUSSION

### a. Eleventh Amendment Immunity (Counts VI–X)

Defendants argue that Plaintiffs' claims for a violation of an unspecified provision of the Maryland Constitution (essentially pleaded as a constitutional tort) (Count VI), Negligence (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Negligent Infliction of Emotional Distress (Count IX), and Defamation (Count X) are barred by the Eleventh Amendment of the United States Constitution. As a general matter, the Eleventh Amendment precludes suit brought against a state in federal court unless Congress has abrogated a state's immunity with respect to a cause of action, or the state has otherwise waived its immunity. *See Hans v. Louisiana*, 134 U.S. 1 (1890). Eleventh Amendment immunity extends to arms of the state and state officials, such as the University of Maryland and its employees. *See Md. Stadium Auth. v. Ellerbe Becket Inc*., 407 F.3d 255, 262–64 (4th Cir. 2005); *Bickley v. Univ. of Md*., 527 F. Supp. 174, 181–82 (D. Md. 1981) (citing cases); *Palotai v. Univ. of Md. Coll. Park*, 959 F. Supp. 714, 716 (D. Md. 1997) ("The immunity that the Eleventh Amendment confers extends also to state agencies and instrumentalities. The University of Maryland is such an arm of the State partaking of the State's Eleventh Amendment immunity.") (internal quotation marks and citation omitted).

Plaintiffs assert that Maryland has waived its Eleventh Amendment immunity pursuant to the Maryland Tort Claims Act. *See* ECF No. ECF No. 26 at 28. Plaintiffs misapprehend Eleventh Amendment waiver. Plaintiffs must demonstrate that that State of Maryland clearly and unmistakably has agreed to subject itself to suit in a *federal* forum. *Palotai*, 959 F. Supp. at

718. This the MTCA does not do. Rather, the MTCA provides for limited waiver of the state's *sovereign* immunity by consenting to be sued in state court under certain conditions. *See* Md. Code Ann., State Gov't § 12-104(a)(1) ("the immunity of the State and of its units is waived as to a tort action, *in a court of the State*, to the extent provided [in] this subsection"); *Proctor v. Washington Metro. Area Trans. Auth.*, 412 Md. 691, 713 (2010); *see also Estate of Leysath v. Maryland*, Case No. GJH-17-1362, 2018 WL 1225087, at *4 (D. Md. March 6, 2018) ("Maryland has not waived its sovereign immunity for the tort claims alleged . . . . Maryland's waiver of sovereign immunity is limited to suits in 'a court of the State.'" (quoting Md. Code Ann., State Gov't § 12-104(a), citing Md. Code Ann., State Gov't § 12-103(2))). Waiver of state sovereign immunity does not implicate the Eleventh Amendment. *Whitaker v. Md. Trans. Admin.*, Civil No. ELH-17-00584, 2018 WL 902169, at *16 (D. Md. Feb. 14, 2018) (MTCA provides a limited waiver of sovereign immunity in Maryland state court; MTCA does not waive Eleventh Amendment immunity (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397 (4th Cir. 1990)). Because Maryland has not waived its Eleventh Amendment immunity to suit in this Court, Counts VI–X will be dismissed.[1]

**b. Failure to State a Claim**

**i. Title VI Discrimination (Count II)**

Title VI prohibits discrimination on the basis of race, color, or national origin by programs receiving Federal financial assistance. 42 U.S.C. § 2000d. Claims related to

[1] Eleventh Amendment immunity does not apply to claims seeking prospective injunctive relief to prevent future specifically described conduct that violates federal law. *See Hyde v. Md. State Bd. of Dental Exam'rs*, Case No. 1:16-cv-02489-ELH, 2017 WL 2908998, at *6 (D. Md. July 7, 2017). Although Plaintiffs broadly request that this Court enjoin Defendants from engaging in "further acts of discrimination . . . as contrary to federal and state law," ECF No. 12 ¶ 148, this kind of "follow the law" injunction is overbroad and unenforceable. *See Davison v. Plowman*, 247 F. Supp. 3d 767, 783 (E.D. Va. 2017) ("injunctions that simply require their subjects to follow the law are generally overbroad") (citing *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008)); *see also* Fed. R. Civ. P. 65(d) (requiring an injunction to describe in reasonable detail the act or acts restrained or required).

employment practices may only be brought pursuant to Title VI "where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. A narrow exception to this rule allows for Title VI claims to proceed where the employment discrimination "necessarily causes discrimination against primary beneficiaries of federal aid." *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 785 (E. D. Va. 2003).

Defendants argue that no pleaded facts demonstrate that UMCP receives federal funding for the primary purpose of providing employment. Defendants are correct. In the Amended Complaint, Plaintiffs provide no factual basis from which to infer plausibly the requisite nexus between federal funding and employment, nor does anything in the Amended Complaint suggest that the alleged discrimination against Plaintiffs necessarily caused discrimination against the primary beneficiaries of UMCP's federal funding.

Plaintiffs respond that this Court should permit the jury to determine whether UMCP's "primary objective" of receiving federal funds is to provide employment. ECF No. 26 at 26. This argument does not advance Plaintiffs' cause. Indeed, it is always the case that the trier of fact will determine if Plaintiffs have met their evidentiary burden at trial. That is a separate matter from whether Plaintiffs have pleaded in their complaint facts that, when taken as true, suffice to give rise to the inference necessary here—that UMCP receives federal funding primarily for purposes of employment. Plaintiffs' conclusory allegations are insufficient to sustain their claim, and their opposition to Defendants' motions further undercuts their position. *See* ECF No. 26 at 25 (UMCP "receives and accepts federal financial assistance in order to operate and facilitate its goal of providing education to its students"). Count II will be dismissed with prejudice.

### ii. Applicable Limitations Period for Title VII and MFEPA Claims[2]

Defendants first argue that Plaintiffs fail to state a claim under Title VII or the MFEPA because most of the alleged conduct is time-barred. For Plaintiffs' Title VII claim, the discriminatory acts for which Plaintiffs can recover are limited to the 300 days prior to the filing of their EEOC charge. *See* 42 U.S.C. § 2000e-5. Under the MFEPA, suit must be filed within two years after the alleged unlawful employment practices. *See Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 570 (D. Md. 2013) (citing Md. Code. Ann., State Gov't § 20–1013(a)). Plaintiffs filed their EEOC complaint on June 8, 2015, and initiated their suit in this Court on June 19, 2017. Accordingly, the Court considers only the conduct occurring after August 12, 2014, for Plaintiffs' Title VII claims, and conduct occurring after June 19, 2015, for the MFEPA claims. Further, because the conduct alleged to have occurred after the filing of Plaintiffs' EEOC charge sufficiently relates to the charges in Plaintiffs' EEOC complaints and would "be expected to follow from a reasonable administrative investigation," *Syndor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012), the Court considers conduct pleaded through 2016. This is especially appropriate because, according to the Amended Complaint, Plaintiffs updated the EEOC by letter in October of 2016 as to ongoing concerns they had regarding their employment.

Plaintiffs argue that Defendants' conduct occurring prior to the applicable limitations periods must nonetheless be considered under a continuing violation theory. The Court disagrees. A continuing violation theory applies, if at all, to Plaintiffs' hostile work environment claims only. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 222 n.5 (4th Cir. 2016). Under this theory, conduct occurring prior to the statutory window may be considered where the pre- and post-

---

[2] Count XI purports to bring a claim for "Continuing Discrimination." ECF No. 12 at 33. The Court has not identified an independent cause of action for "Continuing Discrimination," and, as such, will instead construe Count XI as a theory of liability under Title VII and the MFEPA. *See also* ECF No. 20-1 at 28 n.10.

limitation events are part of a single course of conduct evidencing a discriminatory policy, and where at least one act occurs during the relevant window. *Morgan*, 536 U.S. at 114–15, 117. In this regard, the events must be more than simply related. *Id.* at 114; *Guessous*, 828 F.3d at 222.

Plaintiffs have not met this pleading threshold. The Amended Complaint sets out a disjointed jumble of events, often devoid of explanation or context, and separated by large gaps in time. Plaintiffs first complain of Johnson making negative comments on Plaintiffs' performance reviews and writing up Plaintiffs for being late or making them fill out paperwork. ECF No. 12 ¶¶ 21–26. Plaintiffs also assert that Simmons verbally berated Bell, and that Bell was not being promoted despite "working with" HR to obtain a higher salaried position. Next, Plaintiffs refer to a photograph of wild mustangs appearing in the employee lunch room without any explanation for how this photograph is linked to any of the named Defendants. ECF No. 12 ¶¶ 63–65.

Plaintiffs fail to explain how these discrete instances, separated by time and visited upon them by different supervisors, without any factual commonality apart from the involvement of Plaintiffs, can constitute a course of ongoing discrimination sufficient to allow them to pursue claims based on the time-barred actions. *See Morgan*, 536 U.S. at 113–114; *see Supinger v. Virginia*, 259 F. Supp. 3d 419, 432 (W.D. Va. 2017) (internal quotation marks omitted) (quoting *Soble v. Univ. of Md.*, 572 F. Supp. 1509, 1515 (D. Md. 1983)); *Crockett v*, 943 F. Supp. 2d at 571–72 (failure to promote, coworkers conspiring against plaintiff with respect to a contract, being assigned an "undesirable" contract, "marginalization" with respect to a third contract, being told that a presentation was of poor quality, and criticism of work ethic constituted six distinguishable instances of discrimination, not a continuing violation); *Raynor v. G4S Secure Sols. (USA) Inc.*, 283 F. Supp. 3d 458, 465 (W.D.N.C. 2017) (discussing release, demotion, non-

receipt of incentive pay, denial and non-payment of vacation leave, and termination as discrete acts); *Supinger*, 259 F. Supp. 3d 432.

Moreover, the Amended Complaint is utterly devoid of allegations relating to discriminatory acts *within* the relevant periods of time—no allegedly discriminatory conduct is pleaded in the Amended Complaint between July 2014 and June 24, 2015. *See* ECF No. 12 ¶¶ 36, 41. The Court's limitations analysis, therefore, remains unchanged. The Court next addresses whether the misconduct alleged to have occurred after June 2015[3] is sufficient to sustain the Title VII and MFEPA claims.

**iii. Discrimination Claims**

Workplace discrimination often arises in one of two ways: through disparate treatment, or by creating a hostile work environment.[4] To state a disparate treatment claim, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action taken against plaintiff; and (4) more favorable treatment of a comparator outside of the plaintiff's protected class. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Goode v. Cent. Va. Legal Aid Soc'y*, 807 F.3d 619, 626 (4th Cir. 2015). A hostile work environment claim requires a plaintiff to show that he was subjected to conduct that was (1) unwelcome, (2) based on a protected characteristic, (3) sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment, and (4) imputable to the employer. *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015). Discriminatory acts must be sufficiently adverse to give rise to a discrimination claim.

---

[3] Although the applicable window for Plaintiffs' Title VII claims, as stated, reaches back to August 2014, no discriminatory acts are pleaded until June 2015. Accordingly, the Court refers to post-June 2015 conduct throughout the following discussion.

[4] Discrimination claims under the MFEPA are analyzed under the same standard as claims arising under Title VII. *Royster v. Gahler*, 154 F. Supp. 3d 206, 215 (D. Md. 2015); *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8 (2007).

*See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). An adverse employment action must "result in an adverse effect on the terms, conditions, or benefits of employment." *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) (internal marks and citation omitted). Written warnings alone are not sufficiently adverse to make out a discrimination claim. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651–52 (4th Cir. 2002).

As to either Plaintiff's disparate treatment or hostile work environment claims, Plaintiffs have not put forward sufficient facts to demonstrate that they faced discrimination because of their race. Plaintiffs allege that other Caucasian members of their team were not required to work in the same unsavory conditions as Plaintiffs. But Plaintiffs have not adequately demonstrated that these team members are proper comparators on which to base a disparate treatment claim, nor have they otherwise tied the conduct of which they complain to their race.

For a disparate treatment claim, where a plaintiff's theory of discrimination is by comparison to employees from a non-protected class, the plaintiff "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Johnson v. Baltimore City Police Dep't*, Civil Action No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014)); *see Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Comparators need not be precisely equivalent in position to a plaintiff, but there must be sufficient similarity between them to allow appropriate comparison. *See Roberts v. Coffey*, Civil Action No. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the

similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel.”), *aff’d*, 553 U.S. 442 (2008).

The Amended Complaint gives almost no details about Plaintiffs’ white counterparts. Plaintiffs have not pleaded who their team members were, their job descriptions, or whether they were similarly qualified with similar duties to Plaintiffs so that the Court could determine whether “differentiating or mitigating circumstances” would “distinguish” Plaintiffs from their team members. *Haywood*, 387 F. App’x at 359. The Court, therefore, is unable to infer plausibly that Plaintiffs’ undesirable work assignments were given to them because of their race. Similarly, without factual allegations supporting an inference that Plaintiffs’ assignments were given because of their race, the Court cannot conclude that Plaintiffs faced a *racially* hostile work environment.

Additionally, the Amended Complaint does not provide any context to infer why other employment actions were sufficiently hostile or adverse to Plaintiffs to make out a discrimination claim. *See Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500, 510–11 (D. Md. 2011); *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 485–86 (D. Md. 2016) (behavior that is “mean-spirited” is not an adverse employment action sufficient to make out a disparate treatment claim without some effect on compensation or terms and conditions of employment); *Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 549–50 (W.D.N.C. 2011) (plaintiff’s belief that a written warning could have impacted later job performance evaluations was insufficient to show adverse action when it was not so used); *cf. Spencer v. Virginia State Univ.*, 224 F. Supp. 3d 449, 459–60 (E.D. Va. 2016) (for purposes of retaliation claim, reference to plaintiff as a troublemaker, refusal to sign plaintiff’s time sheet, encouragement of plaintiff’s student to file a complaint, chastisement of plaintiff via e-mail for challenging defendant’s pay practices, and

denying plaintiff opportunity to teach a class outside of the defendant university did not alone or together constitute a materially adverse employment action). That Jones had to submit paperwork before returning to work in June 2015, or that Simmons informed HR it must "cease communications" with Plaintiffs, do not permit an inference of adverse employment action or make out a hostile work environment. ECF No. 12 ¶¶ 41, 42, 77. And even though Plaintiffs received "write-ups," the Court is left to wonder what, if anything, resulted from such write-ups. Without further detail as to why Defendants' actions are sufficiently adverse to be legally cognizable, Plaintiffs' discrimination claims fail.

**iv. Retaliation Claims**

To state a claim for retaliation, a plaintiff must allege facts to support that (1) the plaintiff engaged in a protected activity; (2) the defendant took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse action. *See Booth*, 186 F. Supp. 3d at 487. The retaliatory action must be "materially adverse." *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68. This requires the Plaintiff to allege plausibly that the employer's acts would dissuade a reasonable employee from making or supporting a charge of discrimination. *Id.*

Plaintiffs' allegations are sufficient to support a retaliation claim. The Amended Complaint avers that shortly after Bell and Jones filed their EEOC charge, they were given a series of inhospitable work assignments—either outside in extreme heat or cold, or in a building with mold. These assignments were new, physically dangerous, and different than the assignments given to other colleagues who had not complained to the EEOC. When taking these facts as true and in the light most favorable to Plaintiffs, the retaliation claim survives challenge.

Defendants' sole response is that the adverse assignments are not sufficiently severe to be actionable as retaliation. The Court cannot agree. Being forced to work in extreme heat and extreme cold or under known unsafe conditions detrimentally affects the terms and conditions of employment. Moreover, subjecting Plaintiffs to such dismal work would dissuade the reasonable employee from complaining in the future. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (adverse action sufficient to state a retaliation claim is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). Plaintiffs' retaliation claims, therefore, will proceed.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss. Counts VI–X of Plaintiffs' Amended Complaint are dismissed with prejudice because the Defendants are immune from suit in this Court under the Eleventh Amendment. Count XI ("Continuing Discrimination") is dismissed with prejudice because it is not a distinct, legally cognizable claim. Count II, Plaintiffs' Title VI claim, likewise is dismissed with prejudice. The discrimination claims set forth in Counts I and III are dismissed without prejudice and with leave to amend within fourteen days of this Opinion, affording Plaintiffs one final opportunity to plead additional facts about post-June 2015 events that show that Defendants' conduct was motivated by race and sufficiently adverse to Plaintiffs. If Plaintiffs so amend, they must set out their discrimination claims in separate counts from the retaliation claims (Counts I and III). If Plaintiffs amend, Defendants may either renew their motions to dismiss or answer. If Plaintiffs do not amend, Defendants shall answer Plaintiffs' retaliation claims. In either case, Defendants' response to Plaintiff's operative complaint is due on July 16, 2018. A separate order follows.

6/14/2018
Date

/S/
Paula Xinis
United States District Judge