# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL BELL, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Civil Action No. PX-17-1655 |
| | * |
| | * |
| UNIVERSITY OF MARYLAND | * |
| COLLEGE PARK CAMPUS FACILITIES | * |
| MANAGEMENT, *et al.*, | * |
| | * |
| Defendants. | * |
| | ****** |

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action are cross motions for summary judgment. ECF No. 58; ECF No. 59. The matter has been fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments, the Court GRANTS Defendants' motion and DENIES Plaintiffs' motion.

**I.     Background**

The following facts are undisputed. Plaintiffs Michael Bell and Duray Jones, two African American male electricians, have worked for the Renovation Services division of the Facilities Management Department at the University of Maryland College Park ("UMCP") since 2013 and 2015 respectively. ECF No. 58-3 at 6–7; ECF No. 58-4 at 7–8. Bell is a High Voltage Electrician, and Jones is a Systems Reliability Technician. ECF No. 12 ¶¶ 5, 6. Bell and Jones worked in a six-member team that included three male Caucasian electricians, Philip Reisler, Brian Sharp, and Richard Midgett, as well as another African American electrician, Hans "Rick" Crews. ECF No. 58-3 at 6–7; ECF No. 58-4 at 7–9.

During the relevant time frame, 2013 through 2016, Bell and Jones were paid two of the

highest salaries on their team. ECF No. 58-9 ¶ 6; ECF No. 58-10; ECF No. 58-11. Also, Renovation Services kept detailed, contemporaneous records to track which projects each of its of its six team members worked. ECF No. 58-5 at ¶ 10; ECF No. 58-13. The system also tracked the particular work assignments and whether the electricians worked overtime or straight time. *Id.* Overtime was customarily offered to the electricians in order of seniority. ECF No. 58-5. ¶ 8.

In 2014, Plaintiffs lodged grievances with the University regarding work, overtime assignments, and other safety issues. ECF No. 58-3 at 8; ECF No. 58-4 at 6. Plaintiffs originally averred that after filing such grievances, and in retaliation, they were made to work outside in the scorching heat and freezing cold unlike their Caucasian counterparts. ECF No. 40. Plaintiffs also had claimed that they were forced to work in a building contaminated with mold. *Id.*

However, the undisputed record evidence demonstrates otherwise. As for the outside summer project, all Renovation Services worked a similar number of hours. ECF No. 58-5 ¶¶ 12–15; ECF No. 58-6 ¶¶ 9–10; *see also* ECF No. 58-3 at 21–22; ECF No. 58-4 at 22–23. Indeed, even Jones conceded in his deposition that he did not believe he had been assigned to work this project because of his race. *Id.* at 24.

Likewise as to winter work, although half of the Renovation Services team had already been working on other projects, Bell, Jones, and a third electrician were staffed to work on the outside project because they were the only available staff members in the department. ECF No. 58-5 ¶ 20; ECF No. 58-15. The third electrician was Sharp, a Caucasian electrician who worked more hours than Jones on the project and about the same number of hours as Bell. ECF No. 58-5 ¶¶ 17–18; ECF No. 58-15. Nothing in record suggests these assignments were motivated by anything other than staffing needs. Jones again admitted that this winter assignment, in his view,

was not racially motivated.  ECF No. 58-4 at 25–26.

As for the building with supposed mold in it, the record reflects that the Plaintiffs worked alongside all other Renovation Services employees and in the same vicinity, in part because the Renovation Services shop had been relocated at the time.  ECF No. 58-5 ¶¶ 6, 22; *see also* ECF No. 58-20; ECF No. 58-21.  Neither Plaintiffs observed mold where they were assigned to work, ECF No. 58-3 at 28–32, or suffered any injury arising from mold exposure.  *Id.* at 35; ECF No. 58-4 at 39–40.

Plaintiffs also initially complained about a variety of other seeming instances of discrimination that arose after they began the administrative grievance process in 2014. Plaintiffs had alleged, for example, that they had been singled out to have no contact with Human Resources, had been harassed about taking bereavement leave, and had been subjected to disparaging and racially charged remarks.  ECF No. 40.  However, at this stage of the proceedings, Plaintiffs appear to have abandoned *all* claims related to these averments, and so the Court will not belabor them here.

Plaintiffs now confine their claims to a single allegation—that in May of 2014, Reisler, a Caucasian worker in Renovation Services, "received a job reclassification and pay increase as of May 2014," and that "Defendant has not provided any legitimate, non-discriminatory reason" for Reisler receiving the pay increase not similarly granted to Plaintiffs.  ECF No. 59 ¶ 3.  As evidence supporting this claim, Plaintiffs rely singularly on a December 8, 2016 Equal Employment Opportunity Commission ("EEOC") Determination ("the Determination").  *See* ECF No. 59-1.  In it, an EEOC officer concludes, after investigation, that "reasonable cause" exists to believe that Defendant denied Plaintiffs "a wage increase and equal terms and conditions of employment because of . . . race."  *Id.* at 2.

Pertaining to this narrow pay-disparity allegation, Defendant has submitted pertinent employment records which demonstrate that in July 2013, Reisler applied for and was promoted to Electrician-High Voltage, Grade 13. *See* ECF No. 60-2; ECF No. 60-3. At the time, Bell already held the position of Electrician-High Voltage, Grade 13, and Jones the position of Electrical Systems Reliability Technician, Grade 15. ECF No. 60-8 ¶ 5. Thus, neither Plaintiff applied for the promotion that Reisler received. *Id.* ¶ 7. Also, Plaintiffs' have always earned more than Reisler, even after Reisler's promotion. ECF No. 58-9 ¶ 6.

In 2014, after Reisler's promotion, all electricians in the Renovation Services division sought job reclassifications and pay increases. ECF No. 60-8 ¶ 6; *see* ECF No. 60-6. The University denied the request to all electricians across the board. ECF No. 60-8 ¶ 6; *see also* ECF No. 60-7.

## II.    Standard of Review

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23), *aff'd sub nom.*

*Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"While a party may support its position on summary judgment by citing to almost any material in the record, the party's reliance on that material may be defeated if 'the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.'" *Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(c)(2)); *see also Mandengue v. ADT Sec. Sys., Inc.*, No. ELH-09-3103, 2012 WL 892621, at *20 (D. Md. Mar. 14, 2012) (quoting *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

"Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### III. Discussion

#### a. Abandoned Claims

Plaintiffs' Third Amended Complaint asserts three causes of action: (1) race discrimination, (2) retaliation, and (3) hostile work environment, all in violation of Title VII. Civil Rights Act of 1964, 42 U.S.C. § 2000d; *see* ECF No. 40. However, in response to Defendants' dispositive motion and the ample evidence Defendants have marshalled in support of its requested relief, Plaintiffs have offered no argument, legal or factual, as to why the lion's share of the claims should survive challenge. *See* ECF No. 59.

"A plaintiff's failure to respond to a summary judgment motion may constitute a waiver or abandonment of a claim." *Estate of Edgerton v. UPI Holdings, Inc.*, No. CCB–09–1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1246–47 (D. Md. 1997)); *see also White v. Buckeye Fire Equip. Co.*, No. 3:17-CV-404-MOC-DSC, 2018 WL 2304048, *4 (W.D.N.C. May 21, 2018) (collecting cases) (finding that a failure to respond to summary judgment motion on discrimination claims constitutes abandonment, entitling defendant to grant of summary judgment in its favor). Although Plaintiffs cast a wide net in their Third Amended Complaint, they have undoubtedly disavowed all but one discrete wage discrimination claim. *See* ECF No. 59. Accordingly, summary judgment is granted as to all other claims based on Plaintiffs' abandonment of the same.

#### b. Wage Discrimination Claim as to Reisler

Plaintiffs still maintain, however, that they were victims of racially motivated wage discrimination arising from their coworker, Reisler, having received a promotion and pay raise. *Id*. Plaintiffs, more particularly, contend that the record evidence, viewed most favorably to Defendant, compels summary judgment in Plaintiffs' favor on this narrow ground. *Id*.

Defendant vigorously challenges the claim on limitations and factual grounds and contends that summary judgment should be granted in its favor. ECF No. 60. Because no set of facts viewed most favorably to the Plaintiffs could sustain the claim, the Court grants Defendant's motion and denies Plaintiffs' requested relief.

Title VII prohibits discrimination in employment because of an employee's race. 42 U.S.C. § 2000e-2(a)(1). Where, as here, Plaintiffs have not marshalled direct evidence of intentional discrimination, the claim is subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). A prima facie pay-disparity case under *McDonnell Douglas* requires that a plaintiff establish he was (1) a member of a protected class, (2) performing his job satisfactorily, (3) was subjected to adverse employment action, and (4) under circumstances suggesting a discriminatory motive. *Spencer*, 919 F.3d at 207 (citing *McDonnell Douglas*, 411 U.S. at 802). Critically, where "the prima facie case of wage discrimination is based on comparators, the plaintiff must show that [he] is paid less than" similarly situated Caucasian employees. *Id.* (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994)). *See also Trusty v. Maryland,* 28 F. App'x 327, 329 (4th Cir. 2002) (relying on *Bazemore v. Friday*, 751 F.2d 662, 670 (4th Cir.1984), *aff'd in part, rev'd in part on other grounds*, 478 U.S. 385 (1986) (per curiam)).

Defendants first take aim at Plaintiffs' proffered evidence in support of their pay-disparity claim—the EEOC reasonable cause Determination. Defendants challenge the admissibility and reliability of the Determination, ultimately urging the Court to disregard it. For several reasons, the Court concludes that the Determination would be inadmissible at trial, and so does not merit consideration here. However, even if the Determination were considered, it does

not provide sufficient evidence to save the pay-disparity claim.

With regard to EEOC reasonable cause determinations, the Court can and would exclude the report at trial for several reasons. First, an EEOC reasonable cause determination "comes with the imprimatur of government approval," which risks that a trier of fact will place undue weight on the report's findings. *Price v. Grasonville Volunteer Fire Dep't*, No. ELH-14-1989, 2016 WL 6277666, at *4 (D. Md. Oct. 26, 2016) (quoting *Roberts v. Wal-Mart Stores, Inc.*, No. 95-0059-H, 1997 WL 38138, at *2 (W.D. Va. Jan. 28, 1997)). Accordingly, the Court would exclude the Determination at trial on this basis alone.

Second and alternatively, even if the Determination could somehow be stripped of its prejudicial content, it constitutes otherwise inadmissible hearsay. Reading the Determination most favorably to Plaintiffs, it amounts to a summary of information that the EEOC officer learned during the course of the EEOC investigation. The report itself, therefore, is the author's out of court statement submitted for the truth of the matter asserted and for which Plaintiffs have proffered no hearsay exception. *See* Fed. R. Evid. 801(c).

Third, even if the report itself could be admitted as a business or public record, *see* Fed. R. Evid. 803(6) and 803(8), the report includes statements made by others; this hearsay within hearsay is inadmissible unless any exception to the hearsay rule has been proffered for each out of court statement. *See Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 513 (D. Md. 2012). No such proffer is offered. Thus, the report suffers from this additional defect.

Fourth, as Defendants point out, the Determination is unreliable in that it conflicts, in many respects, with the record evidence. For example, the Determination asserts that Reisler was granted a "job reclassification" and given a higher salary as a result. ECF No. 59-1. The record evidence otherwise demonstrates that Reisler was promoted upon application to a position

for which neither Plaintiff had applied.  ECF No. 60-3; ECF No. 60-8 ¶ 7.  The Determination also states that Reisler was granted a job reclassification while other employees, including Plaintiffs, were denied such reclassification.  ECF No. 59-1 at 1.  However, the record demonstrates, indisputably, that Reisler was never granted a reclassification.  *See* ECF No. 60-6 at 12–16.  In fact, the University audited all positions in 2014 and determined that all electricians in Renovation Services were properly classified, so no electrician received a reclassification.  ECF No. 60-8 ¶ 9.  Accordingly, the Determination itself directly contradicts the record evidence, and so is excluded as fundamentally unreliable.  *Cf.* Fed. R. Evid. 807(a)(1) (explaining that a statement otherwise excluded by the hearsay rule is admissible if "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made" as well as any corroborating evidence).

Even if the Determination could overcome evidentiary hurdles, the Plaintiffs' pay-disparity claim still cannot survive challenge.  Because the claim is based on unequal pay, Plaintiffs must marshal some evidence that the comparator received higher pay than Plaintiffs as a result of discrimination.  But the record unequivocally shows that Plaintiffs *always* were paid a higher salary than Reisler and enjoyed either a higher or commensurate grade position.  Thus, even when viewing the facts most favorably to Plaintiffs, and taking into account the Determination, the pay-disparity claim nonetheless fails as a matter of law.

## IV.    Conclusion

As explained, Plaintiffs have abandoned all but one claim asserting disparate pay on account of race discrimination.  However, when construing the record evidence most favorably to Plaintiffs, the disparate pay claim, too, does not survive challenge.  Summary judgment is therefore granted in Defendants' favor.  For the same reasons, Plaintiffs' cross-motion for

summary judgment on the same claim is denied. A separate order follows.

2/28/2020
Date

/S/
Paula Xinis
United States District Judge